UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 5:16-CV-00016-MR

| | |
|---|---|
| JEFFREY D. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| NANCY A. BERRYILL, ) | |
| Acting Commisoner of Social ) | |
| Security ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 8] and the Defendant's Motion for Summary Judgment [Doc. 11]. As more fully explained below, the Court will grant the Plaintiff's motion and remand this matter.

**I.     PROCEDURAL BACKGROUND**

The Plaintiff, Jeffrey D. Davis ("Plaintiff") asserts that his right rotator cuff pain, depression, and anxiety constitute severe mental and physical impairments under the Social Security Act (the "Act") rendering him disabled. On February 27, 2012, the Plaintiff filed an application for disability benefits under Title II of the Act and protectively filed a Title XVI application for

supplemental security income, alleging an onset date of August 1, 2011. [Transcript ("T.") at 23]. The Plaintiff's application was denied initially and upon reconsideration. [Id.]. Upon Plaintiff's request, a hearing was held on May 9, 2014, before an Administrative Law Judge ("ALJ"). [Id.]. Present at the hearing were the Plaintiff; Bill P. Gordon, the Plaintiff's attorney; and a vocational expert ("VE"). [Id.]. On June 26, 2014, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [Id. at 23-32]. On November 24, 2015, the Appeals Council denied the Plaintiff's request for review [Id. at 1], thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments

("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§

404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV.   THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, August 1, 2011. [T. at 25]. At step two, the ALJ found that the Plaintiff has severe impairments including right rotator cuff pain, depression, and anxiety. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id. at 26]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the he is limited to occasional reaching with the dominant right upper extremity, needs to avoid concentrated exposure to hazards, and is limited to simple, routine, repetitive tasks in a stable environment at a nonproduction pace with occasional public contact.

[Id. at 27].

The ALJ identified Plaintiff's past relevant work as a rip saw operator, a frame builder, and a material handler. [Id. at 30]. The ALJ observed, however, that because the Plaintiff's residual functional capacity limitation to light work is inconsistent with the classification of these jobs as medium to heavy work, the Plaintiff "is unable to perform past relevant work." [Id.].

With the Plaintiff having carried his burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs Plaintiff is able to do, given his RFC. [Id. at 31]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that he was able to perform, including shipping and receiving weigher. [Id.]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from August 1, 2011, the alleged onset date, through June 26, 2014, the date of the ALJ's decision. [Id.].

## V.  DISCUSSION[1]

In this appeal, the Plaintiff asserts three assignments of error. First, Plaintiff contends the ALJ failed to comply with SSR 00-4p in failing to resolve

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

a conflict between the VE's testimony and the Dictionary of Occupational Titles (DOT). Second, Plaintiff argues the ALJ erred in rejecting the opinion of Plaintiff's treating family practice nurse, Tanya Dyer, FNP-C ("Nurse Dyer"). Finally, Plaintiff contends the ALJ erred in assessing his mental residual functional capacity. The Plaintiff argues these errors require remand. [See Doc. 9 at 12, 18, 23]. The Defendant, on the other hand, asserts that the ALJ's reliance on the VE's testimony was proper, that substantial evidence supports the ALJ's evaluation of Nurse Dyer's opinions, and that, to the extent there was any error in the RFC assessment, it was harmless. [See Doc. 12 at 6-21]. Having considered the arguments raised by both parties, the Court concludes that the ALJ erred in one of the three ways argued by Plaintiff.

### A. The VE Testimony.

Plaintiff argues the ALJ improperly relied on the VE's determination that Plaintiff could work as a shipping and receiving weigher. Plaintiff contends that this job requires a reasoning level of "3" and that this is inconsistent with the RFC assessment limiting Plaintiff to simple, routine, repetitive tasks. Level 3, according to the DOT, requires a person to

> Apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving

> several concrete variables in or from standardized situations.

DOT, Appendix C, Section III. "There is no direct correlation between the DOT's reasoning levels and a limitation to carrying out simple instructions or performing simple work; thus, jobs requiring an individual to perform such work [are] consistent with a DOT reasoning level of either 2 or 3." Martin v. Colvin, No. 1:14-cv-234, 2015 WL 9094738, at *5 (W.D.N.C. Dec. 16, 2015 (Voorhees, J.) (quoting Carringer v. Colvin, No. 2:13-cv-00027-MOC, 2014 WL 1281122, at *3 (W.D.N.C. Mar. 27, 2014) (Cogburn, J.); see also Clontz v. Astrue, No. 2:12-cv-00013, 2013 WL 3899507, at *5 (W.D.N.C. July 29, 2013) (Whitney, J.); Thacker v. Astrue, No. 3:11-cv-246-GCM-DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) (Cayer, J.); Williams v. Astrue, No. 3:11-cv-592, 2012 WL 4756066, at *4 (W.D.N.C. Aug. 27, 2012) (Cayer, J.). While Plaintiff cites to several cases in which other courts found an inconsistency between an RFC limiting a claimant to simple, routine, repetitive tasks and a job with a DOT classification of a reasoning level three [Doc. 9 at 17-8], these cases, to the extent they support Plaintiff's position, are not dispositive. Courts in the Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits have held there is no conflict between a job classified at reasoning level three and a limitation to simple, routine, unskilled work. Willilams, 2012 WL 4756066, at *4 (citations omitted). As the Court finds

there is no inconsistency to resolve, the ALJ made no error in accepting the VE's testimony that Plaintiff could perform the job of shipping and receiving weigher.

**B.     The Opinion of Nurse Dyer.**

Plaintiff contends the ALJ erred in rejecting and assigning no weight to the opinion of Plaintiff's treating family practice nurse, Nurse Dyer, and in failing to give "legally sufficient" reasons for this rejection. [Doc. 9 at 21]. Nurse Dyer is a certified family nurse practitioner and, therefore, is considered a health care provider who is <u>not</u> an "acceptable medical source" under the Regulations. 20 C.F.R. §§ 404.1513(d) & 416.913(d).

Nurse Dyer had treated the Plaintiff for approximately two years at the time she prepared a Medical Opinion Re: Ability To Do Work-Related Activities on August 5, 2013.[2] [T. at 363]. In this Opinion, Nurse Dyer notes Plaintiff's symptoms as "chronic pain to shoulder" and his treatment as "chronic pain meds." She then, however, assesses other limitations of

---

[2] Nurse Dyer prepared two other medical opinion questionnaires in the same format as the one at issue. [See T. at 406-7, 411]. These other questionnaires are dated December 5, 2013, and March 13, 2014. The opinions expressed in the three questionnaires are somewhat inconsistent and conflicting. [See T. at 363, 406-7, 411]. Plaintiff's memorandum references and presents argument only with respect to the "first questionnaire." [Doc. 9 at 21]. The Court's review, therefore, is limited to the opinions expressed by Nurse Dyer in the August 5, 2013 questionnaire. The result reached by the Court on this issue would be the same, however, were the other two questionnaires considered in evaluating the propriety of the weight assigned to Nurse Dyer's opinions, as they lend no support to Plaintiff's argument on this issue.

Plaintiff unrelated to his shoulder. Namely, she opines that Plaintiff can stand and walk during an 8-hour workday for a maximum of only two hours and that Plaintiff "needs the freedom to shift at will between sitting or standing/walking." [Id.].

The ALJ considered Nurse Dyer's opinions and decided to attribute "no weight" to them because they "reflect greater limitations than supported by the record of evidence." [Id. at 28]. The ALJ also notes:

> [T]he responses were provided by [someone] who is neither a doctor or specialist, and denote diagnosis and findings specific to the right shoulder, but assess limitations in the ability to sit, stand and walk. No medical rationale was provided evidencing the correlation between shoulder problems and assessed limitations in the ability to sit, stand and walk.

[Id.]. The ALJ then evaluated the opinions of several "acceptable medical sources" that had examined the Plaintiff and accorded these opinions "significant weight" in his determination of the nature and severity of Plaintiff's impairments. [Id. at 29-30]. Specifically, the ALJ consulted the record evidence and identified medical source opinions that supported his ultimate physical residual functional capacity assessment, as well as his rejection of Nurse Dryer's opinions. [See id.].

SSR 06-03p prescribes how the Commissioner is to consider opinions from sources who are not "acceptable medical sources." Plaintiff argues,

"SSR 06-03p recognizes under certain circumstance[s], an opinion from a 'non-medical source' that has seen the claimant in his or her professional capacity may 'properly be determined to outweigh the opinion from a medical source, including a treating source.'" [Doc. 9 at 21 (citing SSR 06-03p)]. Plaintiff's assertion is correct but incomplete. The Regulations more fully state:

> [A]n opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" <u>if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion</u>.

SSR 06-03p (emphasis added). Plaintiff, however, does not outline any circumstances in this case that warrant giving Nurse Dyer's opinion more weight than the opinions of several acceptable medical sources. Because the Regulations and the record evidence as a whole, which includes several medical source opinions afforded "significant weight" by the ALJ, support the rejection of Nurse Dyer's opinions, this assignment of error must be overruled.

## C. The RFC Assessment.

Plaintiff also assigns error to the ALJ's mental RFC assessment. Namely, Plaintiff contends the ALJ failed to give a complete function-by-function analysis of the nonexertional mental functions associated with Plaintiff's difficulties in broad areas of functioning and failed to make a complete finding as to Plaintiff's mental RFC.

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the Regulations.[3] SSR 96-8p; see also, Mascio, 780 F.3d at 636 (remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

---

[3] The functions listed in the Regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

When a plaintiff's claim is based on severe mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(E). The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8P; 20 C.F.R. §§ 404.1520a, 416.920a.

With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A). Therefore, the determination of mental RFC, as noted above, is accomplished through the use of the aforementioned "special technique."

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)…. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that

> substantiate the presence of the impairment(s) and document our findings[.]

20 C.F.R. § 404.1520a(b). For this reason, Rule 96-8p explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

SSR 96-8p. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 26-7]. At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria in listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders),[4] the ALJ made findings

---

[4] Paragraph B of these listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. These criteria represent the areas of mental functioning a person uses in a work setting. They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404, Appendix 1 to Subpart P, § 12.00(A).

on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. [Id.]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)</u>. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

[T. at 27 (emphasis added)].

By finding in step three that Plaintiff suffers from mild restriction in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence or pace, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B. In formulating Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated into any actual functional limitations. It appears the ALJ attempted to account for Plaintiff's moderate difficulties with concentration, persistence or pace by limiting Plaintiff to "simple, routine, repetitive tasks in a stable

environment at a nonproduction pace." [T. at 27]. A limitation to simple, repetitive tasks at a non-production pace, however, does not "account for a limitation in concentration, persistence or pace." Mascio, 780 F.3d at 638; see also Kitrell v. Colvin, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); Scruggs v. Colvin, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.). Furthermore, with respect to the limitation of "occasional public contact," there is no explanation from the ALJ as to the basis for this limitation or how it accounts for any of Plaintiff's limitations, if at all. A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). As the Fourth Circuit stated in Mascio, "[p]erhaps the ALJ can explain why

[Plaintiff's] moderate limitation in concentration, persistence or pace … does not translate into a limitation in [his] residual functional capacity…. But because the ALJ gave no explanation, a remand is in order." 780 F.3d at 638.

For these reasons, this matter will be remanded to the ALJ so that he may properly articulate his assessment of the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636. A careful function-by-function analysis of Plaintiff's mental limitations and work abilities is crucial to the ALJ's ability to thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitations in concentration, persistence or pace and social functioning and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's mental residual functional capacity in accordance with and evidencing use of the "special technique" set forth in 20 C.F.R. § 404.1520a(b) and Rule 96-8p.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 8] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 11] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 25, 2017

Martin Reidinger
United States District Judge